# EXHIBIT I

## **DECLARATION JACKIE DODSON**

The undersigned, Jackie Dodson, deposes and states as follows:

1. My name is Jackie Dodson, and I am over the age of nineteen (19) years. I have personal knowledge of the facts set forth in this Declaration, and I give this Declaration voluntarily, without coercion and under penalty of perjury.

2. In March 1991, I was hired to work as a sales associate selling sewing supplies and vacuum cleaners at Sears Roebuck & Co., in Auburn, Alabama. I then went to work in the electronics department. Sometime in 1996, I was promoted to the appliance department. I am currently still employed as a full-time associate in Sears' appliance department.

3. Sales associates in the appliance department are paid strictly on a commission basis.

4. As a sales associate in the appliance department, my duties primarily include being familiar with Sears' promotions and discounts, selling appliances to customers, working the cash register, keeping the sales area and the appliances clean, unpacking and setting out the appliances and the accessories on the sales floor for display, and any other duties that management asks me to perform.

5. Sears has a handbook that contains Sears' policies including its policy against the giving of unauthorized discounts. This policy strictly prohibits sales associates from applying a coupon or other type of discount to a transaction when the customer is not eligible to receive the coupon or discount. I am aware that Sears considers the giving of unauthorized discounts to be unethical and unacceptable behavior and that associates can be terminated for it.

6. Since I have been employed with Sears, it has offered various coupons to its customers. The coupons have terms and conditions written on them including what products the coupon can be applied to and what customers are eligible to receive the discount on the coupon.

7.  I was trained not reuse a coupon or to use it inconsistent with the terms stated on the coupon to close a sale. I would throw away the coupons I used or put them in the drawer to be turned into the cash office at night.

8.  In mid to late 2004, I recall that Sears offered a $65.00 service coupon. I understood that these coupons were given out by Sears' service technicians (and not sales associates) at the customer's home after a customer declined a service repair. I further understood that the customer would then bring this coupon to the store and present it to the sales associate to use towards the purchase of a replacement item. I understood that we (the sales associates) were not supposed to reuse it after the customer presented it to us for the discount.

9.  I never gave a customer an unauthorized discount using Sears' service coupon or any other coupon.

10. The only times I have ever applied the service coupon to a sale is when a customer has brought the coupon into the store after receiving it from a service technician. After receiving the service coupon from the customer, I either threw it away or I put it in the drawer to be turned in to Sears' cash office.

11. I never gave a customer a discount using a service coupon that was already in the register.

12. In November 2004, John Lawrie was my direct supervisor, Kenny Reese was the Store General Manager and Terry Gandy was the Loss Prevention Manager.

13. On or about November 1, 2004, Terry Gandy informed me that he and the loss prevention team were currently conducting an investigation into the misuse of the service coupon and he asked me if I knew anything about the misuse of the service coupon. I told him I did not. Gandy then asked me not to discuss this matter with any other sales associates in the department.

At that time, he indicated that he had not specifically reviewed my transactions. Gandy did not tell me which sales associates he had already investigated.

14. On or about November 15, 2004, I met with Terry Gandy and Nina Fitzwater, who was the HR Lead at the time. Gandy informed me that his investigation showed that I had given four (4) customers a discount using the service coupon and that he was able to confirm that three (3) of these customers had recently had a service call and therefore were eligible for the discount. He asked me if I could explain the fourth transaction. I recalled and explained that I had given this discount to a customer whose daughter had actually received a service call and a service coupon and then had given it to her mother to use. I explained that I understood that the mother was purchasing a replacement item for her daughter as a gift. I wrote and signed a statement to this effect. A true and correct copy of this statement is attached to my Declaration as Exhibit A.

15. It is my understanding that based on my explanation regarding this fourth transaction, Sears determined that I had not given a customer an unauthorized discount using the service coupon and therefore I was not terminated.

16. I am African-American.

17. No one from management, including Kenny Reese, Terry Gandy, or John Lawrie, ever told me to use coupons to close a sale if the customer was not eligible to receive the coupon.

18. I do not recall hearing anyone from management, including Kenny Reese, Terry Gandy, or John Lawrie instruct a sales associate to use a service coupon or any other coupon to close a sale if the customer was not eligible to receive the coupon.

19. I never saw any one from management put any service coupons by the register or distribute them to the sales associates.

20. I understand that Sears investigated all of the sales associates in the appliance department for the misuse of the service coupon. I do not know what the investigations showed with respect to any of these other associates.

21. I have no reason to believe that Terry Gandy, Kenny Reese, or anyone in management thought that I had given an unauthorized discount using the service coupon or any other coupon.

22. I am not aware of any Sears employee who has given a customer an unauthorized discount using a coupon who was retained by Kenny Reese, Terry Gandy or any Sears manager.

23. I got along with Kenny Reese when he was the SGM. I do not know if he spoke to certain associates more than others.

24. When Kenny Reese was the SGM, I never observed him telling anyone not to watch football.

25. When Kenny Reese was the SGM, I did not observe that he asked certain sales associates to perform tasks away from the sales floor any more than other sales associates. I do not know what he asked other sales associates to do.

26. Kenny Reese and John Lawrie have asked me to dust the sales area and to bring items from the back to put on the sales floor. I understood that this was part of my job as a sales associate. I do not know if Reese or Lawrie asked other associates to do this.

27. When I worked as a sales associate in the appliance department John Lawrie asked me put up range cords and other accessories that went with the home appliances out on the floor and to take any empty boxes to the back. This was part of my job as a sales associate. I do not know if he asked other sales associates to do this.

28. I work as a full-time sales associate. I completed a sheet that notified management of my availability. When Reese was the SGM and Lawrie was Hardlines Manager, I stated that I wanted off on Wednesdays and Sundays and that I was available to work anytime on all of the other days. I usually got Wednesdays and Sundays off. I do not know if other appliance associates received the days off they requested.

29. I never heard Kenny Reese, Terry Gandy, John Lawrie, or anyone in management ever make any derogatory remarks about African-Americans.

30. I never heard Kenny Reese, Terry Gandy, or John Lawrie say that either Denise Smith or Beatrice Willis was terminated because of her race.

31. I never observed that Reese, Gandy, or Lawrie treated me any differently than the white associates.

32. I do not know who made the decision to terminate Denise Smith or Beatrice Willis.

33. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

5/31/06
DATE

*Jackie Dodson*
JACKIE DODSON

**Statement**

Unit # 2585    Incident # _____
p. __1__ of __1__

I was Interview by Terry and nina fitzwater about miss use of a Service Coupon. transiction Question was Legitimate Daughter Had Service Call and Send mother the Coupon, and She purchase the Refrig. for her, as a gift.

Completed by Jacquelyn Dodson   Signed Jacquelyn Dodson   Date 11/15/04
Reviewed by Terry Gandy   Signed Terry Gandy   Date 11/15/04

EXHIBIT A

00202
SMITH V. SEARS
CLIENT RECORDS