IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| DENISE L. SMITH, | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.: 3:05cv1018-MHT |
| | ) |
| SEARS ROEBUCK & CO., | ) |
|    Defendant. | ) |

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff submits the following response and brief in opposition to Defendant's Motion for Summary Judgment:

**I. STATEMENT OF CASE**

Denise Smith, an African-American female, was employed at Sears as a sales associate in the appliance department at the Sears' store in Auburn, Alabama. Before and during 2004, management at the Sears Auburn Store made it a practice to reuse coupons out of the register drawers for customers and employees regardless of what type of coupon it was, see Exhibit 1, Decl. Shannon Bryant, Par. 5 . When coupons would not take through the register the sales associate would page the Manager on Duty and the manager would go to the register to swipe or manually input the supervisor's approval code, see Exhibit 1, Decl. Shannon Bryant, Par. 5. In short management at the Sears Auburn Store set their own policy for coupon use which did not at all follow Sears' corporate policy. Shannon Bryant states in her declaration, "Sears Corporate Policy was not being followed by Sears Auburn Store, Unit 2595. The management staff was not good

1

leaders at the Sears of Auburn Store. I was part of the Sears Auburn Store Management Team, I was confused and was lead to believe that we (Sears Auburn Store) had our own set of policies and procedures, which were different from the other full-line stores." See Exhibit 1, Decl. Shannon Bryant, Par. 23. The sales associates at the Sears Auburn Store followed what the management at the Sears Auburn Store wanted them to do to help drive sales, see Exhibit 1, Decl. Shannon Bryant, Par. 13, Exhibit 4, Decl. Beatrice Willis, Par. 9. Sears' management at the Sears Auburn Store knew their policy on "in store" coupon use long before November 2004, and knew how they had their sales associates using coupons. Kenny Reese, the Sears Auburn Store General Manager, would have some associates, Shannon Bryant, Instore Marketing Lead, and himself to make copies of expired coupons to distribute at all the registers, see Exhibit 1, Decl. Shannon Bryant, Par. 13. Kenny Reese terminated Denise Smith's employment with Sears on November 14, 2004, on the pretext of violating the service coupon policy.

On April 28, 2005, Smith filed an EEOC charge against Sears for race discrimination. The EEOC dismissed the charge and gave Smith the right to sue Sears. On October 24, 2005, Smith filed a lawsuit against Sears under Title VII of the Civil Rights Act of 1964. Sears filed an answer on December 5, 2005.

## II. STATEMENT OF FACTS

A. COUPON USE

Before and during 2004, management at the Sears Auburn Store made it a practice to reuse coupons out of the register drawers for customers and employees regardless of what type of coupon it was, see Exhibit 1, Decl. Shannon Bryant, Par. 5. When coupons would not take through the register the sales associate

2

would page the Manager on Duty and the manager would go to the register to swipe or manually input the supervisor's approval code, see Exhibit 1, Decl. Shannon Bryant, Par. 5. In short management at the Sears Auburn Store set their own policy for coupon use which did not at all follow Sears' corporation policy. Shannon Bryant states in her declaration, "Sears Corporate Policy was not being followed by Sears Auburn Store, Unit 2595. The management staff was not good leaders at the Sears of Auburn Store. I was part of the Sears Auburn Store Management Team, I was confused and was lead to believe that we (Sears Auburn Store) had our own set of policies and procedures, which were different from the other full-line stores." See Exhibit 1, Decl. Shannon Bryant, Par. 23. The sales associates at the Sears Auburn Store followed what the management at the Sears Auburn Store wanted them to do to help drive sales, see Exhibit 1, Decl. Shannon Bryant, Par. 13, Exhibit 4, Decl. Beatrice Willis, Par. 9. Sears' management at the Sears Auburn Store knew their policy on "in store" coupon use long before November 2004, and knew how they had their sales associates using coupons. Denise Smith in her declaration, Exhibit 1, states in Par. 25, "I personally know that Michael Cunningham (a white male) had abused coupons and was not terminated for coupon abuse. I personally saw a transaction (which was before October 2004) that was given to Terry Gandy where Michael Cunningham had used between 5 to 8 coupons on one sales transaction and no adverse action was taken against him. I personally know that several associates had complained about Michael Cunningham's unethical selling practices and no adverse action was taken against him. Kenny Reese and Terry Gandy still would have not terminated Michael Cunningham had it not been for the District Loss Prevention Manager not Terry Gandy and Kenny Reese."  Kenny Reese, the Sears Auburn Store General

3

Manager, would have some associates, Shannon Bryant, Instore Marketing Lead, and himself to make copies of expired coupons to distribute at all the registers, see Exhibit 1, Decl. Shannon Bryant, Par. 13.

    Denise Smith does not state in her deposition that she was ever given training specifically on the policies in the Sears' Associate Handbook. Smith states in her Deposition, page 143, lines 14, 15 that there were no meetings on coupons. Smith states in her Declaration, see Exhibit 2, Par. 4, "They never held a meeting where coupons were discussed." Smith challenges all declaration statements that say coupons were discussed to include the following: Kenny Reese's Exhibit D, Par. 5, not include see Sears' Brief; John Lawrie's Exhibit E, Par.7, not include see Sears' Brief; Terry Gandy's Exhibit B, Par.9, not include see Sears' Brief ; and Byron Mason's Exhibit C, Par. 10, not include see Sears' Brief. Shannon Bryant, Instore Marketing Lead, state in her declaration that management had never trained associates annually in regards to the Associate Handbook, and while Kenny Reese was Store General Manager they never discussed unauthorized discounts or policies, see Exhibit 1, Decl. Shannon Bryant, Par. 15. James S. Benson, sales associate and an assistant sales manager, states in his declaration, "I attended a number of meetings and training sessions, both in-store and off-site, and I do not recall the statement or implementation of a policy regarding coupons. Reusing store coupons from various circulars or booklets was a practice that was widely used throughout the store until 2004 when, suddenly, sales associates were terminated for improper coupon use." See Exhibit 3, Decl. James S. Benson, Par. 3. Beatrice Willis in her declaration states, "While Kenny Reese was store general manager at the Auburn Store; we never had any training on the policy and procedures for the use of coupons" See Exhibit 4, Decl. Beatrice Willis, Par. 13.

Denise Smith in her declaration Par. 12 when questioned by Terry Gandy about using coupons states that no manager past or present had told her to destroy or turn coupons in at night, and that sales associates have always used coupons more than once and management encouraged it. Shannon Bryant in her declaration states the following: "To the best of my knowledge, management had <u>no</u> training on how to discard a coupon after the associate have retrieved the coupon from the customers <u>nor</u> would there be any documentation on file that will show there was any kind of training on coupon procedures while Kenny Reese, a white male, was the Store General Manager." See Exhibit 1, Decl. Shannon Bryant, Par. 7. Kenny Reese's declaration, Exhibit D, Par. 6 states, "During my employment at Sears, we trained the sales associates to discard a coupon after they received it from a customer and applied it to a sale or to put it in the detail drawer to be turned into the cash office at the end of the day. Associates were specifically told not to reuse coupons presented to them by customers." Terry Gandy in his declaration Exhibit D, Par. 9 states, "During my employment at the Auburn store, sales associates were trained to discard a coupon after they received it from a customer and applied it to a sale <u>or</u> to put it in the detail drawer to be turned into the cash office at the end of the day. Terry Gandy's response to Smith was that every management operate differently, see Exhibit 2, Decl. Denise Smith, Par. 12. It should be noted at this point that Terry Gandy did not state to Smith what she had stated about coupon use at the Sears' Auburn Store was not true he just made the comment every management operate differently, see Exhibit 2, Decl. Denise Smith, Par. 12. Shannon Bryant in her declaration states the following about Terry Gandy: "In August 2004, I witnessed Stephanie Darby, a white female, remove a $30.00 coupon out of her register drawer in the appliances department to ring two

(2) separate transactions for Terry Gandy, a white male, to purchase a dishwasher and cook top. He told me that he was purchasing these items for his parents because they had purchased a home in Phenix City, Alabama. I didn't report this incident to upper management because this was a common practice that was set by management for the Sears Auburn Store." See Exhibit 1, Decl. Shannon Bryant, Par. 6. Terry Gandy in his declaration, Exhibit B, states the following: Par 28: "I have never misused Sears' service coupon or any other coupon to give a customer an unauthorized discount. I have likewise never received an authorized discount from a sales associate when I have purchased an item from Sears. Denise Smith in her declaration Exhibit 2, Par. 9, states the following: "I personally know that Terry Gandy has used coupons on his personal transactions. I personally know this because at 1:02 p.m. on March 6, 2004, I sold a big screen television to Terry Gandy that he was purchasing for his friend. The television was located on the sales floor. Terry and his friend were given 10% off for the television being a floor model and then I went into the drawer at the register #003 located in the electronics department and pulled out several coupons that were applied to their sale. I personally heard the friend tell Terry he was going to pay on Terry's Sears card for the television and that he appreciated what he was doing for him." Beatrice Willis states in her declaration Exhibit 4, Par. 12, "I have witnessed on several different occasions where Terry Gandy has made purchases for friends and family members using coupons that were pulled from the register draw."

     Terry Gandy investigation for misusing the service coupon was for a period of 30 days, the month of October 2004, only. Sears states this was because of a memory limitation on Sears' register system, but Sears had a database that Terry Gandy could have done a complete and thorough investigation, see Exhibit 1,

Decl. Shannon Bryant, Par. 15, Exhibit 4, Decl. Beatrice Willis, Par. 11. Terry Gandy's investigation makes no reference to determining who actually rang a given sale under a given employee's number. Beatrice Willis stated to Terry Gandy, "I told him because the sale was rung under my number doesn't mean that I had actually rung all those sales. I know that I didn't ring some of the sales that I was terminated for. See Exhibit 4, Decl. Beatrice Willis, Par. 9. Shannon Bryant states in her declaration, "Sears of Auburn Store Management allowed for other associates to ring under other associates register/employee numbers. See Exhibit 1, Decl. Shannon Bryant, Par. 10. Denise Smith states in her declaration, "I personally know that other associates and/or management rang sales in other associates number on a routine basis... Another example of sales that were rung under my number was during my vacation (July 2, 2004 - July 10, 2004) to Chattanooga, Tennessee a sale in which a customer purchased a house full of appliances that was rung under my number by Carolyn Landers...Carolyn Landers rung another sale in my number while I was not at the store, nor on the schedule. The customers name was Terry & Linda Dozier of Opelika, Alabama. Carolyn Landers rung the refrigerator (item #54584) for her and range (item #47153) and dishwasher (item #16464) in my number. See Exhibit 2, Decl. Denise Smith, Par. 8.

 B. SEARS RECORD POLICY

 Shannon Bryant states in her declaration, "Sears of Auburn store management has always given associates the access to pull up not only their customer information, but other associates customer information. They even allowed the associates in the Hardline area to take their blue books home which had customer information in it." See Exhibit 1, Decl. Shannon Bryant, Par. 9.

### C. RACE DISCRIMINATION

Shannon Bryant states in her declaration, "In September 2004, I, in fact, heard Terry Gandy state to John Lawrie, 'we are finally getting rid of the two (2) black trouble makers in appliances,' and John Lawrie said, 'that's good'." See Exhibit 1, Decl. Shannon Bryant, Par. 12. Terry Gandy states in his declaration, "I have never made any derogatory remarks about African-Americans or heard anyone in management ever make any such remarks while I was the LP Manager." See Exhibit B, Decl. Terry Gand, Par. 50. Terry Gandy states in his declaration, "I have never unlawfully considered an employee's race in making an employment decision." See Exhibit B, Decl. Terry Gand, Par. 46. John Lawrie states in his declaration, "I did not treat African-American employees less favorably than I treated white employees." See Exhibit E, Decl. John Lawrie, Par. 29. John Lawrie states in his declaration, "I never heard Kenny Reese, Terry Gandy, or anyone in management ever make any derogatory remarks about African-Americas." See Exhibit E, Decl. John Lawrie, Par. 39.

### D. MISUSING COUPONS BY EMPLOYEES

Denise Smith states in her declaration, "I challenge Kenny Reese statement #19, Terry Gandy statement #13 where they both said Merle Miller had not completed any transactions with service coupons. He had not rung them under his associate number because he was on training at the time and he rung them in our numbers." See Exhibit 2, Decl. Denise Smith, Par. 22.

Shannon Bryant in her declaration states the following about Terry Gandy: "In August 2004, I witnessed Stephanie Darby, a white female, remove a $30.00 coupon out of her register drawer in the appliances department to ring two (2) separate transactions for Terry Gandy , a white male, to purchase a dishwasher and

cook top. He told me that he was purchasing these items for his parents because they had purchased a home in Phenix City, Alabama. I didn't report this incident to upper management because this was a common practice that was set by management for the Sears Auburn Store." See Exhibit 1, Decl. Shannon Bryant, Par. 6.

Denise Smith in her declaration Exhibit 2, Par. 9, states the following: "I personally know that Terry Gandy has used coupons on his personal transactions. I personally know this because at 1:02 p.m. on March 6, 2004, I sold a big screen television to Terry Gandy that he was purchasing for his friend. The television was located on the sales floor. Terry and his friend were given 10% off for the television being a floor model and then I went into the drawer at the register #003 located in the electronics department and pulled out several coupons that were applied to their sale. I personally heard the friend tell Terry he was going to pay on Terry's Sears card for the television and that he appreciated what he was doing for him." Beatrice Willis states in her declaration Exhibit 4, Par. 12, "I have witnessed on several different occasions where Terry Gandy has made purchases for friends and family members using coupons that were pulled from the register draw."

Shannon Bryant states in her declaration, "Sears of Auburn Store Management allowed for other associates to ring under other associates register/employee numbers. See Exhibit 1, Decl. Shannon Bryant, Par. 10. Denise Smith states in her declaration, "I personally know that other associates and/or management rang sales in other associates number on a routine basis... Another example of sales that were rung under my number was during my vacation (July 2, 2004 - July 10, 2004) to Chattanooga, Tennessee a sale in which a customer

purchased a house full of appliances that was rung under my number by Carolyn Landers...Carolyn Landers rung another sale in my number while I was not at the store, nor on the schedule. The customers name was Terry & Linda Dozier of Opelika, Alabama. Carolyn Landers rung the refrigerator (item #54584) for her and range (item #47153) and dishwasher (item #16464) in my number. See Exhibit 2, Decl. Denise Smith, Par. 8.

### E. "DIFFERENCES" IN TREATMENT

Shannon Bryant states in her declaration, "I resigned from Sears because I could not take it any longer being around the discrimination atmosphere of Kenny Reese and Terry Gandy." See Exhibit 1, Decl. Shannon Bryant, Par. 22. Shannon Bryant list numerous examples of discrimination in her declaration see paragraphs: 16; 17; 18; 19; 20; and 21. See Exhibit 1, Decl. Shannon Bryant.

### III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith" when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). Clearly this is not the case in this action there are numerous genuine issues as to material facts stated above to include the following: Shannon Bryant stated the Sears Auburn Store management set their own policy for coupon use and did not follow Sears corporate policy, Kenny Reese and Terry Gandy say they followed Sears corporate policy; Shannon Bryant states that Kenny Reese personally made copies of expired coupons to distribute at all the register which was against Sears corporate policy; Denise Smith states there were no meetings on coupon, Kenny Reese and Terry Gandy say there were; James S. Benson states, "I attended a number of meetings... I do not recall the statement or implementation of

a policy regarding coupons, Kenny Reese and Terry Gandy say there were; Beatrice Willis states, "While Kenny Reese was store general manager at the Auburn Store; we never had any training on the policy and procedures for the use of coupons," Kenny Reese and Terry Gandy say there were; Denise Smith states when questioned by Terry Gandy about using coupons she stated that no manager past or present had told her to destroy or turn coupons in at night, and that sales associates have always used coupons more than once and management encouraged it, Kenny Reese and Terry Gandy say there were instructions given on coupons; Shannon Bryant states that Terry Gandy misused coupons, Terry Gandy states he did not; Shannon Bryant states she saw Stephanie Darby, a white female, remove a $30.00 coupon out Darby's register drawer to ring two separate transactions for Terry Gandy, Terry Gandy does not state this based on his invistigation; Denise Smith personally knows that Terry Gandy used coupons on his personal transactions and Beatrice Willis also has personal knowledge of Terry Gandy use of coupons on his personal transactions, Terry Gandy states he did not; Terry Gandy makes no mention based on his investigation that other sales associates rang sales under other associates number without that associates knowledge; Beatrice Willis states that she told Terry Gandy, "I know that I didn't ring some of the sales that I was terminated for;" John Lawrie states, "I never heard Kenny Reese, Terry Gandy, or anyone in management ever make any derogatory remarks about African-Americas," but he did hear Terry Gandy make such a statement. Plaintiff has produced "significant probative evidence" showing an actual dispute as to material facts. The Plaintiff has presented specific nonconclusory facts that would support a jury verdict against Sears on the issue of discriminatory intent. The Smith comes forward with sufficient evidence to establish a *prima facie* case

and has responded sufficiently to create a genuine issue of material facts.

## IV. ARGUMENT

Sears' management has demonstrated "intentional discrimination" through the statement of Terry Gandy which was made to John Lawrie which was heard by Shannon Bryant. Shannon Bryant states in her declaration, "In September 2004, I, in fact, heard Terry Gandy state to John Lawrie, 'we are finally getting rid of the two (2) black trouble makers in appliances,' and John Lawrie said, 'that's good'." See Exhibit 1, Decl. Shannon Bryant, Par. 12. Denise Smith was the victim of "intentional discrimination" by Sears' management. Terry Gandy's statement, "We are finally getting rid of the two (2) black trouble makers in appliances," shows actual motive and is direct evidence. Sears has articulated that the action taken against Denise Smith was taken for a "legitimate, nondiscriminatory reason." Based on the facts stated above Denise Smith has proven by a preponderance of the evidence that the legitimate reason offered by Sears was not its true reason, but was a pretext for discrimination. The pretext is clear because Sears' management only looked at a thirty day period which limited the investigation to a time where many months of misusing of coupons by management and sales associate would not be reviewed and come to light since management was directly involved in the misusing of all coupons in the Sears' Auburn store. Sears acted with a discriminatory purpose against Denise Smith.

Denise Smith has establish a *prima facie* case of race discrimination by the following:
1. She belongs to a racial minority;
2. She was subjected to an adverse job action. She was terminated from her

job at Sears;

3. Sears did not terminate white employees for misusing coupons to include: Michael Cunningham, Terry Gandy, Kenny Reese, Stephanie Darby, Merle Miller, Carolyn Landers;

4. She was qualified to do the job. Denise Smith states in her declaration, Exhibit 2, Par 14, that Kenny Reese had her go on full-time in the appliances.

## V. CONCLUSION

For the foregoing reasons, this Court should **not** grant Sears' motion for summary judgment because there are genuine issues as to material facts and Denise Smith can produce "significant probative evidence" showing an actual dispute as to material facts. Sears has treated similarly situated white employees more favorably during the time of Denise Smith's employment with Sears.

The legitimate reason offered by Sears was not its true reason, but was a pretext for discrimination. The pretext is clear because Sears' management only looked at a thirty day period which limited the investigation to a time where many months of misusing of coupons by management and sales associate would not be reviewed and come to light since management was directly involved in the misusing of all coupons in the Sears' Auburn store. Sears acted with a discriminatory purpose against Denise Smith.

/s/ T. Robin McIntyre
T. Robin McIntyre
Attorney for Plaintiff
2101 Executive Park Dr.
Opelika, AL 36801

(334) 745-3223

CERTIFICATE OF SERVICE

I do hereby certify that I have on this __26__ day of __July__, 2006, by U.S. Mail sent a copy of the above to:

Hon. Mieke A. Hemstreet
Burr & Forman LLP
3100 South Trust Tower
420 North 20th Street
Birmingham, AL 35203

*T. Robin McIntyre* (signature)
T. Robin McIntyre

14