IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **DENISE L. SMITH ,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: 3:05-CV-1018-MHT |
| ) | |
| **SEARS, ROEBUCK & CO.,** ) | |
| ) | |
| Defendant. ) | |

**PRETRIAL ORDER**

A pretrial hearing was held in this case on September 6, 2006, wherein the following proceedings were held and actions taken:

1. **Parties and Trial Counsel**: Appearing at the pretrial conference were Robin McIntyre for the plaintiff, Denise L. Smith; Mac B. Greaves and Mieke A. Hemstreet for the Defendant, Sears, Roebuck & Co. The following intend to appear as counsel at trial: Robin McIntyre for Plaintiff, and Mac B. Greaves, K. Bryance Metheny, and Mieke A. Hemstreet for the Defendant.

2. **Jurisdiction and Venue**: The jurisdiction is invoked pursuant to the provisions of Title VII of the Civil Rights Act 1964 and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391 (b), (c), and 28 U.S.C. § 81 as the Defendant has engaged in business in Auburn, Alabama within the Middle District, Eastern Division.

3. **Pleadings**: The following pleadings have been allowed: Complaint (October 25, 2005) on behalf of Plaintiff; Answer (December 5, 2005) on behalf of Defendant; Motion to Amend Complaint (June 15, 2006, granted by Judge on June 19, 2006) on behalf of Plaintiff; Answer to Amended Complaint (August 11, 2006) on behalf of Defendant.

4. **Contentions by the Parties:**

    A. The Plaintiff:

Denise Smith, an African-American female, was employed at Sears as a sales associate in the appliance department at the Sears store in Auburn, Alabama. Before and during 2004,

management at the Sears Auburn Store made it a practice to reuse coupons out of the register drawers for customers and employees regardless of what type of coupon it was. When coupons would not take through the register the sales associate would page the Manager on Duty and the manager would go to the register to swipe or manually input the supervisor's approval code. Management at the Sears Auburn Store set their own policy for coupon use which did not at all follow Sears' corporate policy. The sales associates at the Sears Auburn Store followed what the management at the Sears Auburn Store wanted them to do to help drive sales. Sears' management at the Sears Auburn Store knew their policy on "in store" coupon use long before November 2004, and knew how they had their sales associates using coupons. Kenny Reese, the Sears Auburn Store General Manager, would have some associates, Shannon Bryant, Instore Marketing Lead, and himself to make copies of expired coupons to distribute at all the registers. Kenny Reese terminated Denise Smith's employment with Sears on November 14, 2004, on the pretext of violating the service coupon policy. The legitimate reason offered by Sears was not its true reason, but was a pretext for discrimination. Sears' management demonstrated "intentional discrimination" through the statement of Terry Gandy which was made to John Lawrie which was heard by Shannon Bryant. The pretext is clear because Sears' management only looked at a thirty day period for its investigation which limited the investigation to a time where many months of misusing of coupons by management and sales associate would not be reviewed and come to light since management was directly involved in the misusing of all coupons in the Sears' Auburn store. Sears acted with a discriminatory purpose against Denise Smith. Sears has treated similarly situated white employees more favorably during the time of Denise Smith's employment with Sears.

      B.    <u>The Defendant</u>: The plaintiff, Denise Smith (African-American), began working for Sears in April of 1998 as a part-time sales associate at Sears' Auburn store selling vacuum cleaners and microwaves. In April 2004, Kenny Reese (white male), who was the Store General Manager ("SGM") at the time, promoted Smith to a full-time position in the appliance department. At all times during her employment, the plaintiff worked on straight commissions. Smith was terminated from Sears on or about November 14, 2004, because she gave several customers an unauthorized discount using Sears' $65.00 service coupon.

Sears has a policy that strictly prohibits its employees from giving customers unauthorized discounts. This includes applying a coupon to a transaction when the customer is not eligible to receive the discount stated on the coupon. Smith received a copy of this policy and was well aware that she could be terminated for giving unauthorized discounts.

Sears has a $65.00 coupon that Sears' service technicians give to Sears' customers who decline a service repair on their appliance because they would rather replace the item than pay for the repair. Sears offers the $65.00 discount to these customers as an incentive for them to purchase their replacement item at Sears rather than one of Sears' competitors. *Only customers who receive a service call and decline a repair* are eligible to receive this coupon. <u>No</u> <u>other</u> <u>customers</u> are permitted to receive the discount. The coupon itself clearly instructs the sales associates to award the discount to customers who have received a service call and have declined a repair; it also specifically instructs the sales associates to *collect and destroy* the coupon once it is used.

**2**

In October 2004, Smith gave several customers a discount using Sears' $65.00 service coupon even though these customers were *not eligible* to receive this discount. None of Sears' managers ever instructed her to use the service coupon or any other coupon to close a sale if the customer was not eligible for the discount. In late October, Terry Gandy, the Loss Prevention Manager, investigated all the sales associates in the appliance department for misuse of Sears' service coupon after investigating and eventually terminating another appliance associate (Beatrice Willis) for abusing the same service coupon. Because of the memory limitations on Sears' register system, Gandy could only review the details of the sales transactions for approximately the past 30 days. Gandy reviewed the same documents covering this same time period for all the appliance associates. This investigation revealed that only Smith had misused the service coupon. Smith was questioned about these transactions and did not deny misusing the service coupon. Based on Gandy's investigation, Gandy, Kenny Reese, the SGM and the corporate human resources consultants located at Sears' corporate office in Illinois made the decision to terminate Smith for giving customers unauthorized discounts using Sears' service coupon.

Gandy's investigation revealed that none of the other sales associates in the appliance department had abused the service coupon. Gandy also investigated all of the sales associates in the electronics department, both black and white. His investigation revealed that none of these associates had abused the service coupon. Neither Gandy nor Reese had any reason to believe that any other sales associates had misused the service coupon.

Defendant denies that Sears' management made any practice to reuse coupons out of register drawers for all coupons. Defendant denies that Sears' management set its own policy for coupon use which did not follow Sears' corporate policy. Defendant denies that Kenny Reese made copies of expired coupons to distribute to registers and further denies that he had any employees make any such copies. Defendant also denies that management was involved in the misuse of any coupons as claimed by the plaintiff.

Sears denies that it discriminated against the plaintiff on the basis of her race in violation of Title VII of the Civil Rights Act of 1964 or any other statute. The plaintiff's race played no role in the decision to terminate her employment. No one ever said anything to the plaintiff to lead her to believe that she was terminated on the basis of race. No one in management ever stated to anyone that the plaintiff's termination had anything to do with her race. The plaintiff was terminated because she violated Sears' unauthorized discount policy by awarding several customers Sears' $65.00 service coupon who were not eligible for it. The plaintiff never denied misusing the service coupon. Smith understood that Sears terminated her employment because she had used Sears' $65.00 service coupon to give customers unauthorized discounts.

Plaintiff cannot establish a prima facie case of discrimination under Title VII. Since plaintiff's termination, Sears has hired African-Americans to work as sales associates in the appliance department. There are no white employees who were treated more favorably than the plaintiff: No white sales associates abused Sears $65.00 and were retained; Sears management was unaware of any white sales associates who misused Sears' service coupon.

The plaintiff was terminated for a legitimate, non-discriminatory, and non-pretextual reason-- her unauthorized use of the service coupon. The plaintiff's misuse of the service coupon was not a pretext for race discrimination. Giving unauthorized discounts is a violation of company policy. The plaintiff admitted during the investigation that she gave Sears' $65.00 service coupon to customers who were not entitled to it and she understood this to be the basis for her termination. No one in management, including Gandy and Reese, treated Sears' black employees less favorably than Sears' white employees. Reese promoted Smith and several other African-Americans. Reese went to lunch with an African-American employee several times per week. Reese and Gandy also terminated several white persons for similar integrity issues like those involved in Smith's misconduct.

Alternatively, the plaintiff would have been treated no differently by Sears had she not been African-American. The plaintiff's claim for relief is therefore limited by the mixed motive defense: Defendant states that the plaintiff cannot prove any discriminatory conduct on the part of the defendant in view of the fact that it has not discriminated against said plaintiff. Even if plaintiff could prove discriminatory conduct on the part of defendant (which plaintiff cannot), defendant is entitled to a judgment in its favor because some or all of the decisions and/or actions challenged as discriminatory in plaintiff's Complaint would have been undertaken even had the plaintiff not had the protected status alleged. Plaintiff is not entitled to receive any equitable relief in this case because she had not done equity. The plaintiff is not entitled to reinstatement. The plaintiff is not entitled to back pay, or an award of any kind. The plaintiff's damages are limited by after-acquired evidence. Plaintiff is not entitled to any damages because she has failed to mitigate her alleged damages. She does not make a claim for compensatory damages and it not entitled to them. The plaintiff has not made the requisite, clear, and convincing showing to recover punitive damages. Any award of punitive damages would violate the federal and state constitutions as stated in Defendant's Answer to Plaintiff's Amended Complaint.

5. **Stipulations By and Between the Parties**:

The plaintiff began working for the defendant in April of 1998 as a part-time sales associate selling vacuums and microwaves in its Auburn store. In April of 2004, the plaintiff began working full-time in the appliance department. The plaintiff worked as a sales associate in this department until her termination on or about November 14, 2004. Plaintiff's claim is based solely on race discrimination in discharge pursuant to Title VII of the Civil Rights Act of 1964. The plaintiff is not seeking any compensatory damages but is seeking punitive damages and back pay. Defendant denies that the plaintiff is entitled to any damages or relief pursuant to Title VII.

**It is ORDERED that:**

**(1) The nonjury trial of this cause, which is to last three (3) days, is set for October 23,**

> 2006, at 10:00 a.m., at the federal courthouse in Opelika, Alabama;

(2) The parties are to file their pre-trial briefs, by no later than October 18, 2006;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the list of his or her exhibits;

(4) At least three days before trial, counsel are to contact the courtroom deputy clerk about the procedures for pre-marking all trial exhibits;

(5) Each party shall have available a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge; and

(6) All understandings, agreements, and stipulations contained in this pretrial order shall be binding on all parties unless an objection is

**noted and filed with the court within seven (7) days from the date of this order.**

**DONE, this the 14th day of September, 2006.**

                                         /s/ Myron H. Thompson
                                 **UNITED STATES DISTRICT JUDGE**